

SEALED

FILED

JUN 1 2 2017

Mark C. McCartt, Clerk
U.S. DISTRICT COURT



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. **17 CR 067 GKF** |
| **Plaintiff,** | **FILED UNDER SEAL** |
| **v.** | **INDICTMENT** |
| **JOHN CHILTON GATES,** | [COUNT 1: 18 U.S.C. § 371 – Conspiracy to Defraud the United States; |
| **Defendant.** | COUNT 2: 18 U.S.C. § 1349 – Conspiracy to Commit Mail Fraud; COUNT 3: 18 U.S.C. § 1956(h) – Money Laundering Conspiracy; COUNTS 4, 5 & 6: 18 U.S.C. § 1956(a)(1)(A)(i) – Promotional Money Laundering; 18 U.S.C. § 2 – Aiding and Abetting; Forfeiture Allegation: 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(1) and 28 U.S.C. § 2461(c) – Mail Fraud & Money Laundering Forfeiture] |

**THE GRAND JURY CHARGES:**

### COUNT ONE
### [18 U.S.C. § 371]

### INTRODUCTION

At all times relevant to this Indictment:

#### PERSONS AND ENTITIES

1.     **JOHN CHILTON GATES** ("Defendant **GATES**") owned and operated the "Gates Drive Thru," a convenience store located at 401 S. Mill Street, in the City of Pryor, Mayes County, in the Northern District of Oklahoma, that engaged in activities in and affecting interstate commerce.

2.      Defendant **GATES** purchased and sold diverse goods and merchandise, including, but not limited to, synthetic cannabinoid products, at the Gates Drive Thru.

3.      Defendant **GATES** purchased synthetic cannabinoid products from vendors, including, but not limited to the following:   Jonny Clearwater Corp.; ILCM, LLC ("ILCM"); ISI; I TODAY FOR YOU, LLC ("I TODAY FOR YOU"); PUFF N STUFF, LLC, ("PUFF N STUFF"); Sell It, LLC; and Cosmic Daze, who shipped the synthetic cannabinoid products interstate to the Gates Drive Thru for sale to the public.

4.      Defendant **GATES** maintained and controlled a business checking account, Account Number XXX6961, in the name of "John Gates DBA Gates Drive Thru" at RCB Bank, a financial institution as defined in Title 18, United States Code, Section 20, the deposits of which were insured by the Federal Deposit Insurance Corporation, with offices and branch locations in the Northern District of Oklahoma.

5.      On or about October 4, 2011, officers of the Pryor Police Department seized synthetic cannabinoid products and drug paraphernalia and served Defendant **GATES** with an Oklahoma Bureau of Narcotics and Dangerous Drugs notice warning that the sale of synthetic cannabinoid products was illegal.

6.      The United States Food and Drug Administration ("FDA") was an Agency of the United States responsible for, among other things, enforcing the provisions of the Federal Food, Drug and Cosmetic Act ("FDCA"), Title 21, United States Code, Section 301, et seq. The FDA's primary purpose in enforcing the provisions of the FDCA was to protect the public health.   The FDA's responsibilities included regulating the manufacturing, labeling, and distribution of drugs shipped or received in interstate

2

commerce.    The responsibilities of the FDA included preventing drugs that were unapproved for marketing or sale, or which were improperly packaged and labeled, from reaching the marketplace.

### MISBRANDING DRUGS

7.    Synthetic cannabinoids are "designer drugs" developed from an organic source and are functionally similar to THC (the active ingredient of marijuana).  Synthetic cannabinoids are intended for human consumption to affect the function and structure of the human body.  Synthetic cannabinoids mimic the physiological and hallucinogenic effects of THC.

8.    Synthetic cannabinoids are drugs as defined in Title 21, United States Code, Section 321(g)(1)(C), which defines the word "drug" to mean articles (other than food) intended to affect the structure or any function of the body of man.

9.    Synthetic cannabinoids are new drugs as defined in Title 21, United States Code, Section 321(p), as any drug, the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof.

10.    A drug is misbranded unless its labeling bears adequate directions for all intended uses under Title 21, United States Code, Section 352(f).

11.    A drug is misbranded if its labeling is false or misleading in any particular under Title 21, United States Code, Section 352(a).

## CONSPIRACY TO DEFRAUD AND ITS OBJECTS

12.     Beginning at least as early as sometime in or about October 2011 and continuing to in or about May 2013, more exact dates being unknown to the Grand Jury, in the Northern District of Oklahoma and elsewhere, Defendant **GATES** knowingly, intentionally, and willfully combined, conspired, confederated, and agreed with others, known and unknown to the Grand Jury, to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means the lawful government functions of the FDA to regulate the introduction and delivery for introduction into interstate commerce of drugs that had been misbranded with false and misleading labels regarding the status of "Joker," "Oblivion," "D-ZL," "D.O.A.," "Scooby Snax," "El Diablo," "7H," "Jonny Clearwater's BlueBerry Hill," "Cool Beans," and numerous other synthetic cannabinoid products for the purpose of avoiding government regulations over the drugs and to protect the continued sales of such products from which Defendant **GATES** derived substantial income and profits.

## MANNER AND MEANS

13.     It was a part of the conspiracy that Defendant **GATES** and his co-conspirators would and did purchase and sell in and affecting interstate commerce packaged synthetic drugs that were misbranded with false and misleading labels that stated the products were "potpourri," "incense," "aromas," and "not for human consumption."

14.     It was a further part of the conspiracy that Defendant **GATES** and his co-conspirators would and did introduce and cause the introduction of misbranded drugs into interstate commerce, violations of Title 21, United States Code, Section 331(a).

4

15.     It was further part of the conspiracy that Defendant **GATES** and his co-conspirators would and did receive and cause the receipt of misbranded drugs in interstate commerce and deliver and proffer delivery thereof for pay and otherwise, violations of Title 21, United States Code, Section 331(c).

16.     It was further part of the conspiracy that Defendant **GATES** and his co-conspirators would and did cause to be done acts with respect to drugs, while such drugs were held for sale after being shipped in interstate commerce, that resulted in such drugs being misbranded, violations of Title 21, United States Code, Section 331(k).

17.     It was further part of the conspiracy that Defendant **GATES** and his co-conspirators would and did cause the introduction and delivery into interstate commerce of a new drug in violation of Title 21, United States Code, Section 355, to-wit: synthetic cannabinoids, violations of Title 21, United States Code, Sections 331(d) and 333(a)(2).

18.     It was a further part of the conspiracy that Defendant **GATES** intended to defraud and did defraud and mislead the FDA regarding the products' status as synthetic cannabinoids for the purpose of avoiding regulation over the drugs and enabling himself to unlawfully enrich himself through the sales of drugs for money.

## OVERT ACTS

19.     To effect the objects of the conspiracy and to accomplish its purposes and objectives, Defendant **GATES** and his co-conspirators committed and caused to be committed in furtherance of the conspiracy the following overt acts, among others, in the Northern District of Oklahoma and elsewhere:

20.     From in or about October 2011 to in or about May 2013, Defendant **GATES** sold and caused to be sold misbranded synthetic cannabinoid products, including, but not limited to, "Joker," "Oblivion," "D-ZL," "D.O.A.," "Scooby Snax," "El Diablo," "7H," "Jonny Clearwater's BlueBerry Hill," and "Cool Beans" falsely and misleadingly labeled "potpourri," "incense," and "aromas."

21.     From in or about October 2011 to in or about May 2013, Defendant **GATES** sold and caused to be sold misbranded synthetic cannabinoid products, including, but not limited to, "Joker," "Oblivion," "D-ZL," "D.O.A.," "Scooby Snax," "El Diablo," "7H," "Jonny Clearwater's BlueBerry Hill," and "Cool Beans" falsely and misleadingly labeled "not for human consumption."

22.     From in or about October 2011 to in or about May 2013, Defendant **GATES** ordered and caused the shipments of misbranded synthetic cannabinoid products in interstate commerce with false and misleading labels that stated "potpourri," "incense," "aromas," and "not for human consumption."

23.     From in or about October 2011 to in or about May 2013, Defendant **GATES** sold and caused to be sold misbranded synthetic cannabinoid products at Gates Drive Thru with the false and misleading labels "potpourri," "incense," "aromas," and "not for human consumption," when in fact, as Defendant **GATES** knew, the products were intended for human consumption.

All in violation of Title 18, United States Code, Section 371.

**COUNT TWO**
**[18 U.S.C. §§ 1349 and 1341]**

**MAIL FRAUD CONSPIRACY**

24. The allegations contained in paragraphs one through twenty-three of Count One of this Indictment are realleged and incorporated herein as if fully set forth in this paragraph.

25. Beginning at least as early as sometime in or about October 2011, and continuing to in or about May 2013, more exact dates being unknown to the Grand Jury, within the Northern District of Oklahoma and elsewhere, **JOHN CHILTON GATES** knowingly and intentionally combined, conspired, confederated, and agreed with others known and unknown to the Grand Jury, to commit an offense against the United States, that is, having devised and intended to devise a scheme and artifice to defraud the FDA, the State of Oklahoma, and the public, and to obtain money and property by materially false and fraudulent pretenses and representations, that is false pretenses and representations that "Joker," "Oblivion," "D-ZL," "D.O.A.," "Scooby Snax," "El Diablo," "7H," "Jonny Clearwater's BlueBerry Hill," "Cool Beans," and other products were "potpourri," "incense," "aromas," and "not for human consumption" when, in truth and fact, "Joker," "Oblivion," "D-ZL," "D.O.A.," "Scooby Snax," "El Diablo," "7H," "Jonny Clearwater's BlueBerry Hill," and "Cool Beans" were synthetic cannabinoid products that contained synthetic cannabinoids known as AM-2201, UR-144, XLR-11, and PB-22, that were intended for human consumption as a drug, and for the purpose of executing such scheme and artifice, caused to be mailed, sent, and delivered, synthetic cannabinoid

products by commercial interstate carrier, all contrary to the provisions of Title 18, United States Code, Section 1341.

## MANNER AND MEANS

26.     The members of the conspiracy used various manners and means to effect the objects and purposes of the conspiracy, including but not limited to the following:

27.     On or about August 16, 2012, Defendant **GATES** mailed and caused to be mailed a UPS shipment identified by tracking number: 1Z4491A95991052887, from PUFF N STUFF, La Mesa, California, to Gates Drive Thru, of synthetic cannabinoid products.

28.     On or about August 27, 2012, Defendant **GATES** mailed and caused to be mailed a UPS shipment identified by tracking number: 1Z4491A95997966700, from PUFF N STUFF, La Mesa, California, to Gates Drive Thru, of synthetic cannabinoid products.

29.     On or about October 1, 2012, Defendant **GATES** mailed and caused to be mailed a UPS shipment identified by tracking number: 1Z4491A95999369076, from PUFF N STUFF, La Mesa, California, to Gates Drive Thru, of synthetic cannabinoid products.

30.     On or about October 9, 2012, Defendant **GATES** mailed and caused to be mailed a UPS shipment identified by tracking number: 1Z4491A95995089411, from PUFF N STUFF, La Mesa, California, to Gates Drive Thru, of synthetic cannabinoid products.

31.     On or about October 22, 2012, Defendant **GATES** mailed and caused to be mailed a UPS shipment identified by tracking number: 1Z4491A95991870083, from PUFF N STUFF, La Mesa, California, to Gates Drive Thru, of synthetic cannabinoid products.

32.     On or about November 19, 2012, Defendant **GATES** mailed and caused to be mailed a UPS shipment identified by tracking number: 1Z4491A95990052058, from

PUFF N STUFF, La Mesa, California, to Gates Drive Thru, of synthetic cannabinoid products.

33.     On or about December 17, 2012, Defendant **GATES** mailed and caused to be mailed two Federal Express parcels identified by tracking numbers: 794314213470; and 794314213816, from ILCM, Staten Island, New York, to Gates Drive Thru, of synthetic cannabinoid products.

34.     On or about December 17, 2012, Defendant **GATES** mailed and caused to be mailed a UPS shipment identified by tracking number: 1Z4491A95991000950, from PUFF N STUFF, La Mesa, California, to Gates Drive Thru, of synthetic cannabinoid products.

35.     On or about January 17, 2013, Defendant **GATES** mailed and caused to be mailed a Federal Express parcel identified by tracking number: 794546493544, from I TODAY FOR YOU, Fullerton, California, to Gates Drive Thru, of synthetic cannabinoid products.

36.     On or about January 23, 2013, Defendant **GATES** mailed and caused to be mailed a Federal Express parcel identified by tracking number: 794587340581, from I TODAY FOR YOU, Anaheim, California, to Gates Drive Thru, of synthetic cannabinoid products.

37.     On or about February 18, 2013, Defendant **GATES** mailed and caused to be mailed a UPS shipment identified by tracking number: 1Z4491A96290250613, from PUFF N STUFF, La Mesa, California, to Gates Drive Thru, of synthetic cannabinoid products.

38.     On or about February 22, 2013, Defendant **GATES** mailed and caused to be mailed five Federal Express parcels identified by tracking numbers: 794809865137; 794809865262; 794809865300; 794809865799; and 794809865939, from ILCM, Staten Island, New York, to Gates Drive Thru, of synthetic cannabinoid products.

39.     On or about March 6, 2013, Defendant **GATES** mailed and caused to be mailed three Federal Express parcels identified by tracking numbers: 794896856749; 794896856587; and 794896857150, from ILCM, Staten Island, New York, to Gates Drive Thru, of synthetic cannabinoid products.

40.     On or about April 2, 2013, Defendant **GATES** mailed and caused to be mailed three Federal Express parcels identified by tracking numbers: 799419556630; 799419556397; and 799419556592, from ILCM, Staten Island, New York, to Gates Drive Thru, of synthetic cannabinoid products.

41.     On or about April 5, 2013, Defendant **GATES** mailed and caused to be mailed a Federal Express parcel identified by tracking number: 801522027264, from I TODAY FOR YOU, Anaheim, California, to Gates Drive Thru, of synthetic cannabinoid products.

42.     On or about April 15, 2013, Defendant **GATES** mailed and caused to be mailed three Federal Express parcels identified by tracking numbers: 799520763302; 799520763313; and 799520763405, from ILCM, Staten Island, New York, to Gates Drive Thru, of synthetic cannabinoid products.

43.     On or about April 16, 2013, Defendant **GATES** mailed and caused to be mailed a Federal Express parcel identified by tracking number: 801522032193, from I

TODAY FOR YOU, Anaheim, California, to Gates Drive Thru, of synthetic cannabinoid products.

44.     On or about April 30, 2013, Defendant **GATES** mailed and caused to be mailed two Federal Express parcels identified by tracking numbers: 799641809618; and 799641809684, from ILCM, Staten Island, New York, to Gates Drive Thru, of synthetic cannabinoid products.

45.     On or about April 30, 2013, Defendant **GATES** mailed and caused to be mailed a Federal Express parcel identified by tracking number: 799652577470, from I TODAY FOR YOU, Fullerton, California, to Gates Drive Thru, of synthetic cannabinoid products.

46.     On or about May 10, 2013, Defendant **GATES** mailed and caused to be mailed a Federal Express parcel identified by tracking number: 799739267503, from I TODAY FOR YOU, Fullerton, California, to Gates Drive Thru, weighing approximately 60 pounds, containing 1,691 packages of synthetic cannabinoid products, including, but not limited to, "D-ZL" and "Cool Beans."

47.     On or about May 13, 2013, Defendant **GATES** mailed and caused to be mailed three Federal Express parcels identified by tracking numbers: 799729512629; 799729512710; and 799729512721, from ILCM, Staten Island, New York, to Gates Drive Thru, weighing approximately 30 pounds, containing 1,393 packages of synthetic cannabinoid products, including, but not limited to, "Funky Monkey" and "El Diablo."

All in violation of Title 18, United States Code, Sections 1349 and 1341.

## COUNT THREE
## [18 U.S.C. § 1956(h)]

### MONEY LAUNDERING CONSPIRACY

48.     The allegations contained in paragraphs one through twenty-three of Count One and paragraphs twenty-five through forty-seven of Count Two of this Indictment are realleged and incorporated as if fully set forth in this paragraph.

49.     Beginning at least as early as sometime in or about October 2011, and continuing to in or about May 2013, more exact dates being unknown to the Grand Jury, in the Northern District of Oklahoma and elsewhere, **JOHN CHILTON GATES** knowingly and intentionally combined, conspired, confederated, and agreed with others known and unknown to the Grand Jury to commit violations of Title 18, United States Code, Section 1956, to wit: to knowingly conduct and attempt to conduct financial transactions in and affecting interstate commerce, which involve the proceeds of specified unlawful activities, namely mail fraud, in violation of Title 18, United States Code, Section 1341, and conspiracy to commit mail fraud in violation of Title 18, United States Code, Section 1349, with the intent to promote the carrying on of said specified unlawful activities, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

### MANNER AND MEANS

50.     The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

12

51.     It was a part of the conspiracy that Defendant **GATES** would and did obtain significant proceeds, including currency, from mail fraud and mail fraud conspiracy activities.

52.     It was a further part of the conspiracy that Defendant **GATES** would and did use the proceeds of mail fraud and mail fraud conspiracy activities to promote the carrying on of specified unlawful activities, that is, mail fraud and conspiracy to commit mail fraud.

53.     It was a further part of the conspiracy that Defendant **GATES** maintained and used a RCB Bank business checking account, number XXX6961, in the name of John Gates DBA Gates Drive Thru, and in which Defendant **GATES** and another person known to the Grand Jury had signatory authority to make payments to synthetic cannabinoid vendors.

54.     It was a further part of the conspiracy that Defendant **GATES** would and did conduct financial transactions including depositing mail fraud and mail fraud conspiracy proceeds into a business bank account.

## OVERT ACTS

55.     To effect the objects of the conspiracy and to accomplish its purposes and objectives, Defendant **GATES** and his co-conspirators committed the following overt acts, among others, in the Northern District of Oklahoma and elsewhere:

56.     On or about the dates stated in the table below, Defendant **GATES** conducted, caused to be conducted, and attempted to conduct the financial transactions described below, involving the proceeds from the sale of synthetic cannabinoid products, that is, the purchase of  the RCB Bank Cashier's Checks identified by their numbers and

13

amounts below, which were used as payments for the purchases of synthetic cannabinoid

products from the vendors named below:

| Overt Act | Date | RCB Cashier's Check No. | Amount | Vendors |
|---|---|---|---|---|
| 1. | 5/18/2012 | 670993 | $5,387.50 | "JONNY CLEARWATER" |
| 2. | 6/8/2012 | 672802 | $3,180 | "JONNY CLEARWATER" |
| 3. | 6/28/2012 | 674341 | $3,948.64 | "SELL IT, LLC" |
| 4. | 7/17/2012 | 675962 | $4,107 | "SELL IT LLC" |
| 5. | 7/24/2012 | 676373 | $5,235 | "SELL IT LLC" |
| 6. | 8/1/2012 | 677009 | $3,105 | "SELL IT LLC" |
| 7. | 9/4/2012 | 679824 | $6,144.44 | "CHRIS GASH" |
| 8. | 9/13/2012 | 680877 | $1,750 | "ILCM" |
| 9. | 9/24/2012 | 681718 | $2,337.50 | "I L C M" |
| 10. | 10/2/2012 | 682411 | $6,834 | "JONNY CLEARWATER CORP." |
| 11. | 10/17/2012 | 683679 | $2,875 | "ILCM" |
| 12. | 10/23/2012 | 684083 | $4,350 | "ILCM" |
| 13. | 12/17/2012 | 688789 | $5,525 | "ICCM" |
| 14. | 12/21/2012 | 689181 | $5,500 | "I TODAY FOR YOU" |
| 15. | 1/9/2013 | 690597 | $2,580 | "I TODAY FOR YOU" |
| 16. | 1/23/2013 | 691714 | $5,200 | "I TODAY FOR YOU" |
| 17. | 1/29/2013 | 692177 | $3,775 | "ILCM" |
| 18. | 1/29/2013 | 692176 | $4,012.50 | "I TODAY FOR YOU" |

14

| Overt Act | Date | RCB Cashier's Check No. | Amount | Vendors |
|---|---|---|---|---|
| 19. | 2/4/2013 | 692694 | $5,750 | "I TODAY FOR YOU" |
| 20. | 2/12/2013 | 693525 | $4,705 | "I TODAY FOR YOU" |
| 21. | 2/19/2013 | 694002 | $7,450 | "I TO DAY FOR YOU" |
| 22. | 2/19/2013 | 694001 | $2,873 | "ILCM" |
| 23. | 2/22/2013 | 694257 | $19,775 | "ILCM" |
| 24. | 2/22/2013 | 694258 | $7,150 | "I TODAY FOR YOU" |
| 25. | 3/1/2013 | 695001 | $9,025 | "I TODAY FOR YOU" |
| 26. | 3/6/2013 | 695476 | $10,475 | "ILCM" |
| 27. | 3/8/2013 | 695763 | $7,680 | "I TODAY FOR YOU" |
| 28. | 3/26/2013 | 697183 | $9,500 | "I TODAY FOR YOU" |
| 29. | 4/8/2013 | 698374 | $9,570 | "I TODAY FOR YOU" |
| 30. | 4/12/2013 | 698964 | $11,550 | "ILCM" |
| 31. | 4/12/2013 | 698963 | $8,000 | "I TODAY FOR YOU" |
| 32. | 4/25/2013 | 700006 | $4,355 | "I TODAY FOR YOU" |
| 33. | 4/30/2013 | 700376 | $7,475 | "ICLM" |
| 34. | 5/1/2013 | 700466 | $4,830 | "I TODAY FOR YOU" |
| 35. | 5/10/2013 | 701462 | $6,220 | "I TODAY FOR YOU" |
| 36. | 5/10/2013 | 701379 | $9,700 | "ILCM" |

All in violation of Title 18, United States Code, Sections 1956(h) and 1956(a)(1).

## COUNT FOUR
### [18 U.S.C. § 1956(a)(1)(A)(i)]

57.     The allegations contained in Counts One through Three of this Indictment are realleged and incorporated as if fully set forth in this paragraph.

58.     On or about March 6, 2013, in the Northern District of Oklahoma, **JOHN CHILTON GATES** did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, to wit: the purchase of a RCB Bank Cashier's Check, number 695476, in the amount of $10,475 made payable to "ILCM",  which involved the proceeds of specified unlawful activities, that is:  mail fraud in violation of Title 18, United States Code, Section 1341; and mail fraud conspiracy in violation of Title 18, United States Code, Section 1349,  with the intent to promote the carrying on of said specified unlawful activities, to wit,  mail fraud and mail fraud conspiracy, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

## COUNT FIVE
### [18 U.S.C. § 1956(a)(1)(A)(i)]

59.     The allegations contained in Counts One through Three of this Indictment are realleged and incorporated as if fully set forth in this paragraph.

60.     On or about April 12, 2013, in the Northern District of Oklahoma, **JOHN CHILTON GATES** did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, to wit: the purchase of a RCB Bank Cashier's Check, number 698963, in the amount of $8,000 made payable to "I TODAY FOR YOU", which involved the proceeds of specified unlawful activities, that is: mail fraud in violation of Title 18, United States Code, Section 1341; and mail fraud conspiracy in violation of Title 18, United States Code, Section 1349, with the intent to promote the carrying on of said specified unlawful activities, to wit, mail fraud and mail fraud conspiracy, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

## COUNT SIX
### [18 U.S.C. § 1956(a)(1)(A)(i)]

61.     The allegations contained in Counts One through Three of this Indictment are realleged and incorporated as if fully set forth in this paragraph.

62.     On or about April 12, 2013, in the Northern District of Oklahoma, **JOHN CHILTON GATES** did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, to wit:  the purchase of a RCB Bank Cashier's Check, number 698964, in the amount of $11,550  made payable to "ILCM", which involved the proceeds of specified unlawful activities, that is:  mail fraud in violation of Title 18, United States Code, Section 1341; and mail fraud conspiracy in violation of Title 18, United States Code, Section 1349,  with the intent to promote the carrying on of said specified unlawful activities, to wit,  mail fraud and mail fraud conspiracy, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

## FORFEITURE ALLEGATION
### [18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(1) and 28 U.S.C. § 2461(c)]

63.     The allegations contained in Counts Two through Six of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 18, United States Code, Section 982(a)(1) and Title 28, United States Code, Section 2461(c).

64.     Upon conviction of the mail fraud conspiracy, money laundering conspiracy and money laundering violations alleged in Counts Two through Six of this Indictment, as part of his sentence, **JOHN CHILTON GATES**, shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offenses, including, but not limited to:

**MONEY JUDGMENT**

A sum of money in an amount of at least $2,464,457, representing proceeds traceable to the mail fraud conspiracy and the amount of money involved in money laundering.

**UNITED STATES CURRENCY**

$82,347.00 in United States Currency seized from Gates Drive Thru convenience store.

**PROCEEDS OF FINANCIAL ACCOUNTS**

A.     Proceeds of RCB Bank Savings Account # XXXX6895 in the name of John Gates DBA Gates Drive Thru in the Amount of $15,273.92;

B.     Proceeds of RCB Bank Checking Account # XXX6961 in the name of John Gates DBA Gates Drive Thru in the amount of $73,857.77; and

C.     Proceeds of RCB Bank Checking Account # XX1208 in the name of John Gates in the amount of $102,173.98.

19

65.     Pursuant to Title 21, United States Code, Section 853(p), as adopted by Title 28, United States Code, Section 2461(c), the defendant shall forfeit substitute property, up to the value of the property described above if, by any act or omission of the defendant, the property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 18, United States Code, Section 982(a)(1) and Title 28, United States Code, Section 2461(c).

LORETTA F. RADFORD  .
ACTING UNITED STATES ATTORNEY

CATHERINE J. DEPEW
Assistant United States Attorney

A TRUE BILL

/s/ Grand Jury Foreperson
Grand Jury Foreperson